## FIRST NAT. BEN. SOC. v. STUART.

### No. 10231.

Circuit Court of Appeals, Ninth Circuit.

March 8, 1943.

As Modified on Denial of Rehearing
April 12, 1943.

Robert R. Weaver, of Phoenix, Ariz., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, Paul R. Russell, and Louise Foster, Sp. Assts. to Atty. Gen., and Frank E. Flynn, U. S. Atty., of Phoenix, Ariz., for appellee.

Before GARRECHT, HANEY and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellant sought, but was denied, recovery of income taxes alleged to be illegally exacted from it for the years 1936 and 1937, and appeals from the judgment entered in favor of appellee.

Appellant was organized under the laws of Arizona on March 29, 1934. The Articles of Incorporation provide: "That the objects and purposes for which said Corporation is formed are: To engage in, conduct and carry on the business and customary activities of a mutual benefit association within the meaning and provisions of Sections 607-608-609-610 of Chapter 14 of Article 3 of the 1928 Revised Statutes of the State of Arizona as the same now exists. * * *"

Appellant's by-laws classify its funds into three classes, although the distinction between two of them is not clear. It issues contracts of life insurance. It assesses members to procure funds to meet claims under the contracts. Its financial statements show a very small amount of assets, but no liabilities. In other words, there was no ordinary balance statement showing assets and liabilities. Thus, these statements, being only half of the usual balance statement, disclose no reserves whatever. Such reserves as are commonly held as representing the value of the life insurance elements of the policy, are customarily shown as a liability, but appellant discloses no liabilities.

Appellant did submit operating statements which show that its receipts were classified into the various funds mentioned, but while a few show a surplus of receipts over expenditures, none of them shows that any part of such receipts were used to set up a reserve fund of any kind. Those which show a small surplus, the amount is carried in the "Asset" balance statement as such. Otherwise, the operating statements disclose that all receipts were used to pay claims and expenses. In its income tax returns for 1936 and 1937, appellant reported no tax liability but attached to the returns the statement that "The entire income consists of amounts collected from members for the sole purpose of meeting losses and expenses".

The Commissioner of Internal Revenue audited the returns and assessed tax deficiencies for both years on the theory that appellant was not a life insurance company within the meaning of § 201 of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, page 898, and it was therefore taxable under § 207 of that act. Appellant paid the tax, claimed a refund, and after denial of its claims brought this action to recover the tax paid. The court below found that appellant did not voluntarily keep, and no statute, rules or regulations promulgated in the exercise of a power conferred by statute required it to keep, a reserve fund for the fulfillment of its insurance contracts. The court below concluded that appellant was not a life insurance company within the meaning of § 201 of the Revenue Act of 1936, and entered judgment for appellee. This appeal followed.

Appellant contends that it is not taxable because it is a life insurance company within the meaning of § 201 of the Revenue Act of 1936 which defines what is meant in that part of the act by the term "life insurance company" as "an insurance company engaged in the business of issuing life insurance and annuity contracts * * * the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds".

Art. 201(a)-1,Treasury Regulations 94, provides that "no reserve shall be regarded as held for the fulfillment of an insurance contract unless it conforms to the definition of 'reserve' contained in article 203(a) (2)-1". The latter article provides in part as follows: "In general, the reserve contemplated is a sum of money, variously computed or estimated, which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. It must be required either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory, or the District of Colum-

bia when promulgated in the exercise of a power conferred by statute. * * *

"* * * A company is permitted to make use of the highest aggregate reserve called for by any State or Territory or the District of Columbia in which it transacts business, but the reserve must have been actually held. * * *"

 Appellant contends that the finding of the court below, that it maintained no reserve for the fulfillment of insurance contracts, is not sustained by the evidence. We think the finding is the only one possible under the evidence. The evidence goes no further than to show that appellant classified its income, but classifying income is not maintaining a reserve. Likewise, a requirement of the by-laws requiring maintenance of reserves does not show that appellant maintained such reserves.

The statute, itself, does not expressly require a reserve before a company can be considered a "life insurance company". Likewise it does not say that if reserves are kept, they must be of the kind which are required by statute. However, the statute does not provide to the contrary either. The regulations require a reserve, and the kind of reserve specified by state statutes or regulations promulgated thereunder. Appellant argues that the regulations, in so defining, if not limiting, the scope of the statute, have illegally legislated by changing the classification of tax payers. It is not argued that Congress could not have done what the regulations did, but it is argued that Congress has not done so.

The statute as quoted above was originally enacted in 1921. It has existed since without change. The successive regulations have been substantially similar. Under these circumstances "Congress must be taken to have approved the administrative construction and thereby to have given it the force of law". Helvering v. Reynolds Co., 306 U.S. 110, 115, 59 S.Ct. 423, 426, 83 L.Ed. 536. See, also, Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52, and cases cited in note 7. Appellant maintains that the statute is unambiguous, and that it comes within its plain terms, and therefore the regulations cannot limit the statute. We do not regard the statute as unambiguous. The statute itself certainly does not make it clear whether any reserve must be kept,

and it does not make it clear that if reserves are kept they must or must not be of the kind required by state law to be kept. While it might be possible to look at various provisions of the act and its legislative history, and thus determine what Congress should have meant in logic, we are not determining what Congress should have meant, but what it actually meant.

Affirmed.